# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
April 6, 2026

Lyle W. Cayce
Clerk

No. 25-30104

United States of America,

*Plaintiff—Appellee*,

*versus*

Shaquaila Lewis,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:23-CR-67-1

_____

Before Elrod, *Chief Judge*, and Higginbotham and Graves, *Circuit Judges*.

Per Curiam:[*]

Shaquaila Lewis pleaded guilty to one count of wire fraud. The district court sentenced her to twenty-seven months' imprisonment, which, as the government recommended, is at the bottom of the Sentencing Guidelines range. Lewis now appeals her sentence, arguing that the district

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

court clearly erred in applying a sophisticated-means Guidelines enhancement. We AFFIRM.

I

A federal grand jury charged Lewis with four counts of wire fraud and five counts of money laundering. Pursuant to a written plea agreement, Lewis pleaded guilty to only the second count of wire fraud. On the government's motion, the district court dismissed the remaining eight counts. Lewis admitted that she devised a scheme and artifice to defraud the Small Business Administration and various financial institutions by submitting fraudulent loan applications. She fraudulently obtained $1,196,588 in loan proceeds from the Paycheck Protection Program and an Economic Injury Disaster Loan from the SBA.

The PPP was created to provide emergency financial assistance for job retention and other expenses to American small businesses during the COVID-19 pandemic. A business could use PPP loan proceeds only for listed permissible expenses, including payroll costs, mortgage interest, rent, and utilities. To obtain a PPP loan, the business, through its representative, had to state and provide documentation for its average monthly payroll expenses and declare the number of its employees. As for the disaster loans, they were created to provide financing to small businesses in regions affected by declared disasters. As with the PPP, the Coronavirus Aid, Relief, and Economic Security Act authorized the SBA to provide disaster loans to small businesses experiencing substantial financial disruption due to the COVID-19 pandemic.

In an attempt to fraudulently obtain as much money as possible from the programs, Lewis camouflaged her fraud. In addition to providing fictitious IRS 2019 Schedule C tax forms, W-3 forms, and employer identification numbers to obtain the loans, Lewis further concealed her

2

scheme by depositing fake payroll checks, misrepresenting how she would use the emergency funds, and submitting the initial application to register her business three months after her initial PPP application.

## II

Lewis asserts that the district court committed a sentencing error by imposing the sophisticated-means enhancement. The sophisticated-means enhancement applies when "the offense . . . involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means." U.S. Sent'g Guidelines Manual § 2B1.1(b)(10)(C) (U.S. Sent'g Comm'n 2025). "[S]ophisticated means" means "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." *Id.* § 2B1.1 cmt. n.9(B). Lewis contends only that her conduct did not constitute sophisticated means, not that she lacked intent. She objected within the district court, so our review is for clear error. *United States v. Miller*, 906 F.3d 373, 367–77 (5th Cir. 2018).

Lewis emphasizes the district court's characterization of the scheme at issue as "remarkably simple in approach." However, even remarkably simple approaches can qualify for the enhancement. *See United States v. Valdez*, 726 F.3d 684, 695 (5th Cir. 2013). Under our precedent, a defendant's conduct may warrant the sophisticated-means enhancement if the conduct pertaining to the execution or concealment of an offense: (1) is especially complex or intricate; or (2) made it more difficult for the offense to be detected, even if the conduct was not by itself particularly sophisticated. U.S.S.G. § 2B1.1 cmt. n.9(B); *Valdez*, 726 F.3d at 695.

Lewis's conduct meets this standard because, as the district court expressly determined, her conduct made it more difficult for the offense to be detected. Here, Lewis used multiple fraudulent tax documents including

Schedule C forms, W-3s, and fictitious employer identification numbers to request PPP loans and a disaster loan. She also wrote fake payroll checks to herself. These checks concealed the fraudulent nature of the funds and enabled her to fraudulently apply for loan forgiveness. Most importantly, the fake payroll checks disguised the overall scheme. This scheme was further cloaked when Lewis registered her business three months after her initial PPP application to make the company appear legitimate.

Lewis also insists that the sophisticated-means enhancement should not apply to her because she did not mastermind this scheme. While it would be enough that Lewis had already admitted to "devis[ing] a scheme and artifice to defraud the SBA and various financial institutions," Lewis's argument also runs aground on the Sentencing Guidelines themselves. A sophisticated-means enhancement "shall be determined on the basis of," among other things, "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant." U.S.S.G. § 1B1.3(a)(1)(A). They "shall [also] be determined," "in the case of a jointly undertaken criminal activity," whether or not the defendant is charged as a conspirator, on the basis of the acts and omissions of others that were "within the scope of the jointly undertaken criminal activity," "in furtherance of that criminal activity," and "reasonably foreseeable in connection with that criminal activity," so long as those acts and omissions "occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." *Id.* § 1B1.3(a)(1)(B). Therefore, whether Lewis was the "mastermind" is immaterial.

AFFIRMED.